WILLIE M., a minor; Jeanette M., a minor; Tom H., a minor; Timothy B., a minor, all by their next friend, Albert Singer, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

James B. HUNT, Jr., Governor, State of North Carolina; Sarah T. Morrow, Secretary, Department of Human Resources, State of North Carolina; A. Craig Phillips, State Superintendent of Public Instruction, State of North Carolina; David Bruton, Chairman, North Carolina State Board of Education; Hosea C. Brower, Director, Samarkand Manor, Division of Youth Services, Department of Human Resources, State of North Carolina; C. B. Hayslett, Director, C. A. Dillon School, Division of Youth Services, Department of Human Resources, State of North Carolina; Field Montgomery, Director, Cherry Hospital, Division of Mental Health, Mental Retardation and Substance Abuse Services, Department of Human Resources, State of North Carolina; John A. Williams, State Budget Officer, State of North Carolina; J. A. Porter, Controller, Department of Public Instruction, State of North Carolina; George Bason, District Court Judge, 10th Judicial District, State of North Carolina; Larry T. Black, District Court Judge, 26th Judicial District, State of North Carolina, Defendants.

No. C–C–79–294.

United States District Court,
W. D. North Carolina,
Charlotte Division.

June 15, 1981.

Robert D. McDonnell, Charlotte, N. C., Christine O'Connor Heinberg, Deborah Greenblatt, Carolina Legal Assistance for the Mentally Handicapped, Raleigh, N. C., Loren M. Warboys, Elizabeth J. Jameson and Mark I. Soler, Juvenile Justice Legal Advocacy Project, San Francisco, Cal., for plantiffs.

Everette Noland, Steven Mansfield Shaber and William F. O'Connell, North Carolina Dept. of Justice, Raleigh, N. C., and E. Osborne Ayscue, Jr., Helms, Mulliss & Johnston, Charlotte, N. C., for defendants.

ORDER

McMILLAN, District Judge.

Plaintiffs' counsel filed a motion for an award of attorneys' fees, defendants responded to the motion, and oral argument was heard from all parties on May 4, 1981. The court, in its discretion and after review of the file, determines that fees for plaintiffs' counsel should be awarded and that the amounts set out below for such fees are reasonable and should be taxed as costs.

Pursuant to the standards set forth in *Johnson v. Georgia Highway Express, Inc.*,

488 F.2d 714 (5th Cir. 1974), and *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), the court makes appropriate findings as follows:

1. *Time and labor required.*—Plaintiffs document 2,567.90 hours spent on this case by ten different lawyers. The lawyers for the state *estimate* that they spent 1,850 hours on the case through November 3, 1980. The time estimated by the state lawyers does not include time spent by other state employees who work in the areas of education and treatment of children.

The amount of time spent by plaintiffs' lawyers was not inordinately greater than the estimated amount of time spent by lawyers for the state and other state personnel. Plaintiffs' lawyers had no built-in resources or experts and had to become and employ their own experts in a short period of time. Obviously, having multiple counsel did necessitate spending a fair amount of time simply communicating among counsel. The court finds that the conferences reported were, for the most part, necessary in putting together a lawsuit of this magnitude. The court has however in arriving at its final figure for fees, reduced the fees somewhat in order to account for the possibility that some of the time spent in conference was duplicative or unnecessary.

Defendants have argued that the ratio of plaintiffs' lawyers' trial preparation time to time allotted for trial is too high. This ratio is an absolutely irrelevant consideration. Most cases are eventually settled without going to trial, but the tough ones are settled only after the combatants begin to see the "whites of the eyes" of the opposition.

Plaintiffs claim that because the defendants would not capitulate early, they had to spend hundreds of hours in unavoidable discovery and review of documents in order to determine the adequacy of treatment and the scope of the class. Plaintiffs' reported hours are also reasonable because, as the parties with the laboring oar, they had to decide on strategy and face numerous issues which the defendants in response did not need to consider.

The court rejects the defendants' notion that there were "too many lawyers with too little direction" and is in substantial agreement with plaintiffs' lawyers' statement that "we spent the time we spent because we needed to spend it."

The case was beautifully prepared and presented from start to finish—and the court believes the ultimate good results were largely a result of the plaintiffs' lawyers' careful and thorough work.

2. *The novelty and difficulty of the questions.*—The questions were clearly novel and from the outset appeared to be difficult to win. Plaintiffs' lawyers indicated that numerous experts advised them against bringing the suit because of the complexity of the issues and the remoteness of achieving any real results. They also indicate that because of the complexity, none of them would have undertaken the suit alone. The plaintiffs' task was even more difficult because they had no available proof or experts on their team at the beginning and had to locate and become acquainted with their expert assistants. Additionally, even though a stipulated settlement was finally reached, all issues were vigorously contested by the defendants until the "eve of trial" when the parties arrived at the stipulations.

3. *The skill requisite to perform the legal services properly.*—The suit required a high degree of skill, for reasons already discussed, and the papers, presentation and arguments before the court by plaintiffs' lawyers showed beyond question that they possessed the necessary skills.

4. *The preclusion of other employment by the attorneys due to acceptance of this case.*—Although the court knows of no business which will now be foreclosed to the plaintiffs' lawyers as a result of accepting employment in this case, the time spent on this case was obviously not available for other employment.

5. *The customary fee.*—The fees awarded below are, in view of all the circumstances, entirely in line with customary fees for similar work in this community.

6. *The fixed or contingent nature of the fee.*—The only way plaintiffs' counsel could get paid in this case was to win. If plaintiffs had not won, the lawyers would not have been entitled to fees.

7. *Time limitations.*—This factor has no particular weight.

8. *The amount involved and the results obtained.*—The results, regardless of the outcome of the appeal of the inclusion in the class of children within the custody of the Department of Correction, are extremely significant to a large class of people. The Department of Human Resources has submitted a budget request of $22,000,000.00 for a two-year period which is in substantial part earmarked to provide facilities and services called for by the suit. Hundreds of children will benefit each year from the programs.

9. *The experience, reputation and ability of the attorneys.*—The work done by the plaintiffs' lawyers, most of whom are young, is the product of able, aggressive advocates and should not be discounted in value simply because the lawyers are young. We are told that Alexander the Great was only thirty when he wept for lack of new worlds to conquer. *Johnson v. Georgia Highway Express, Inc., id.*, specifically directs the court not to penalize a young lawyer for only recently being admitted to the bar if he or she demonstrates the necessary skill and ability.

10. *The undesirability of the case.*—Bringing this case originally was financially unattractive to the plaintiffs' lawyers. Other than the financial considerations, this factor has no particular weight. Most of the plaintiffs' lawyers do a substantial amount of work in the area of juvenile rights or other civil rights areas and presumably, this case did not cause them to lose other business.

11. *The nature and length of the professional relationship with the client.*—Although some of the named plaintiffs had been represented by several of plaintiffs' lawyers in juvenile matters prior to the filing of this suit, this factor does not seem to have any particular weight.

12. *Awards in similar cases.*—This award is in line with other awards which have been made in recent years in similar cases.

Bearing in mind all the above factors, the court finds as reasonable and awards as costs the following items, and directs the defendants to pay them to plaintiffs' counsel:

Attorneys' fees: $160,000.00.

2. Costs and expenses (partial award): $8,208.21.

This award is for items listed in the plaintiffs' motion and affidavits, excluding the expenses listed by Sandra Johnson because a dollar amount was not indicated for each item she claimed. An award for reimbursement of her expenses will be made but the court directs her to submit an affidavit setting out the exact amounts she claims as expenses.

IT IS THEREFORE ORDERED THAT the defendants pay to counsel for the plaintiffs the sum of $168,208.21 as a partial award of costs as set out above.